OPINION
{¶ 1} Defendant, Jimmy Coleman, appeals from his conviction and sentence for aggravated robbery with a gun specification.
 {¶ 2} On April 21, 2002, James Graham and his brother, Shannon Graham, were working on a home at 1200 Miami Chapel Road in Dayton that they had purchased and were remodeling. A neighbor who lives hear that home, Dexter Harris, was helping the Graham brothers unload a truck full of building materials. During the work a man, whom Mr. Harris knew and referred to as "Jimbo," stopped by. Both of the Graham brothers and Mr. Harris engaged in conversation with "Jimbo."
 {¶ 3} After the Grahams had finished their work for the day, Mr. Harris left and the Grahams began loading their tools into their car preparing to leave. Jimbo returned and approached the Graham brothers and displayed a small caliber silver handgun with white handles. Jimbo demanded all of the Graham brothers' money, and he threatened to shoot them if they did not comply. After James and Shannon Graham gave Jimbo their money, Jimbo ordered the Grahams to go behind the house. The Grahams complied, and they heard Jimbo leave. After composing themselves, the Grahams called police and provided a description of the robber and his clothing.
 {¶ 4} A few days later the Grahams ran into Dexter Harris again and were able to obtain Jimbo's real name and address from him. Mr. Harris identified "Jimbo" as Defendant, Jimmy Coleman. Defendant lives just a block or two away from the house the Grahams are remodeling. The Grahams passed this information along to Dayton police detective C.W. Ritchie, who then prepared a photospread that included a photograph of Defendant. On May 2, 2002, Det. Ritchie showed the photospread first to Shannon Graham and then to James Graham. Both men identified Defendant as the man who robbed them at gunpoint.
 {¶ 5} Defendant was subsequently indicted on two counts of aggravated robbery, R.C. 2911.01(A)(1), with a firearm specification attached to each count. R.C. 2941.145. Defendant entered a plea of not guilty by reason of insanity and a suggestion of incompetency. After sanity and competency evaluations were completed, the trial court found Defendant competent to stand trial. Thereafter, the trial court appointed new counsel for Defendant at his request.
 {¶ 6} A jury trial commenced on March 3, 2003. On the morning of the second day of trial, after the trial court had overruled his motion to remove his present counsel and appoint new counsel for him, Defendant elected to voluntarily absent himself from the courtroom during the remainder of his trial. The trial court instructed the jurors that they were not to consider Defendant's absence from the courtroom for any purpose.
 {¶ 7} The jury ultimately found Defendant guilty of both counts of aggravated robbery and the firearm specifications. The trial court sentenced Defendant to the maximum term of ten years on each count of aggravated robbery, but ordered those sentences to be served concurrently. The court merged the two firearm specifications and imposed one additional and consecutive three year term, for a total sentence of thirteen years.
 {¶ 8} Defendant has timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "The conviction should be reversed because the conviction was against the manifest weight of the evidence."
 {¶ 10} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive.State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 11} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 12} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (October 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 13} Defendant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides:
 {¶ 14} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 15} "Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 16} The evidence presented at trial weighs heavily in favor of a conviction. Both victims, James Graham and Shannon Graham, testified at trial and described the robbery in detail and identified Defendant as Jimbo, the perpetrator of the robbery. Both Graham brothers had also identified Defendant as the robber from a photospread prepared by police. Dexter Harris also testified at trial and confirmed that Defendant, whom he calls Jimbo, was at the scene where the Graham brothers were working on the day the robbery occurred.
 {¶ 17} Defendant makes much of the fact that neither of the Graham brothers told police to contact Dexter Harris, because Harris knew the man who had robbed them and who was known to Harris as Jimbo. The record demonstrates, however, that the Grahams did not know where Harris lived or how to get in touch with him except to wait for him to come over to their house they were remodeling.
 {¶ 18} In reviewing this record as a whole we clearly cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weigh of the evidence.
 {¶ 19} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 20} "The trial court erred when it denied defendant's motion for a mistrial."
THIRD ASSIGNMENT OF ERROR
 {¶ 21} "The trial court erred when it denied defendant's right to effective assistance of counsel."
 {¶ 22} In these related assignments of error Defendant argues that the trial court abused its discretion when it denied his request during the trial for substitution of counsel or, in the alternative, a mistrial.
 {¶ 23} The decision whether to grant or deny a mistrial lies within the sound discretion of the trial court. State v.Garner, 74 Ohio St.3d 49-59, 1995-Ohio-168. A mistrial should not be declared unless a fair trial is no longer possible. Id.
 {¶ 24} An indigent defendant has no right to have a particular attorney of his own choosing represent him. He is entitled to competent representation by the attorney the court appoints for him. Therefore, in order to demonstrate the good cause necessary to warrant removing court appointed counsel and substituting new counsel, defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel. State v. Coleman (1988), 37 Ohio St.3d 286, 292;State v. Murphy, 91 Ohio St.3d 516, 523, 2001-Ohio-112.
 {¶ 25} Disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel. State v. Glasure (1999), 132 Ohio App.3d 227. Moreover, mere hostility, tension and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense. State v. Gorden,149 Ohio App.3d 237, 241, 2002-Ohio-2761.
 {¶ 26} The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. Murphy,supra. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court.State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 27} On the morning of the second day of trial, out of the presence of the jury, defense counsel informed the trial court that Defendant was not satisfied with his representation because counsel was not doing things that Defendant wanted him to do at trial, that Defendant did not want to continue with counsel and wanted counsel removed from the case, and that Defendant wanted new counsel appointed. When the trial court asked Defendant why he wanted another lawyer at that time, Defendant stated that his present counsel had not properly investigated his case, and that he had written down questions he wanted counsel to ask the State's witnesses on cross-examination but counsel hadn't asked any of those questions. In other words, counsel was not conducting his defense the way Defendant wanted it conducted.
 {¶ 28} The trial court responded that it had appointed two lawyers for Defendant thus far during this case and that both had done a good job for Defendant. The court commented: "Every time you find yourself in a box you want another lawyer." The court advised Defendant that it would not appoint a new lawyer for him at that time, and that his trial would continue. Defendant then declared that he would not continue with the trial with his present counsel representing him. When the court inquired if Defendant wished to represent himself, Defendant replied: "No." The court then advised Defendant that it would not be in his best interest to be disruptive in front of the jury during the remainder of his trial. The trial court ordered Defendant's present counsel to continue representing Defendant for the remainder of the trial.
 {¶ 29} At that point Defendant stated that he was not going to be present during the remainder of the trial. After the court advised Defendant of his rights in that regard, and cautioned him that this tactic of absenting himself from the trial might harm his case and was not in his best interest, Defendant nevertheless elected not to be present in courtroom for the duration of the trial. Accordingly, the trial court had Defendant placed in a nearby room with a monitor, where Defendant could watch and hear the trial and counsel could consult with Defendant between the witnesses.
 {¶ 30} As a result of these events, defense counsel requested a mistrial. The trial court denied that request, stating that it would instruct the jury so Defendant would suffer no prejudice as a result of his waiving his right to be present during trial. When the jury was brought into the courtroom, the court instructed them: ". . . you may notice the defendant is not present with us. He is unavailable at this time. I'm going to instruct you not to make anything of that. You are not to use his presence or lack of presence here for any purpose whatsoever in your deliberations." Subsequently, during its general charge to the jury, the court instructed them: "The defendant's presence or lack of presence in this courtroom is not to be considered by you for any purpose."
 {¶ 31} Examining the totality of these facts and circumstances, we conclude that the trial court did not abuse its discretion in refusing to appoint new counsel for Defendant or denying the motion for a mistrial. Defendant's request for new counsel, coming at the start of the second day of his trial, was ill-timed and, from all appearances, a mere delaying tactic. Defendant had already been provided with one change of counsel. The trial court specifically noted that both of Defendant's attorneys had done a very good job for Defendant. Moreover, Defendant's request for new counsel was not motivated by a total breakdown in communication between defense counsel and Defendant, but rather by a disagreement over trial tactics and strategy, which does not warrant a substitution of counsel. Glasure,supra.
 {¶ 32} Defendant has not demonstrated that the attorney-client relationship had suffered a breakdown of such magnitude that his right to effective assistance of counsel was compromised. Even without Defendant's presence or participation, through cross-examination of the State's witnesses and closing argument, defense counsel presented a defense based upon inconsistencies in the testimony of the two robbery victims and a lack of physical evidence to corroborate their story. Defendant voluntarily elected not to be present during the remainder of his trial. The trial court properly instructed the jury not to consider Defendant's absence from the trial for any purpose, and it presumed that the jury followed the court's instructions.State v. Goff, 82 Ohio St.3d 123, 135, 1998-Ohio-369.
 {¶ 33} The second and third assignments of error are overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 34} "The trial court erred and abused its discretion in sentencing defendant to maximum sentences."
 {¶ 35} The trial court sentenced Defendant to ten years on each count of aggravated burglary, the maximum term allowed by law. R.C. 2929.14(A)(1). R.C. 2929.14(C) authorizes a court to impose the maximum prison term only upon offenders who commit the worst form of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders, and upon certain repeat violent offenders. The trial court must give its reasons for imposing a maximum prison term. R.C. 2929.19(B)(2)(d) and (e).
 {¶ 36} Defendant concedes in his appellate brief that the trial court at the sentencing hearing made the necessary finding to impose a maximum prison term: that Defendant poses the greatest likelihood of committing future crimes. Defendant argues, however, that the court failed to state its reasons for imposing a maximum sentence. We disagree.
 {¶ 37} The trial court's statements that it made during the sentencing hearing when it imposed the maximum sentence adequately explains it reasons for imposing a maximum prison term. The court stated:
 {¶ 38} "THE COURT: Okay. All right. Well, sir, considering the purpose and principals (unintelligible) 2929.12, I'm going to sentence you on Count One of this matter to ten years at CRC. I find specifically that based on your record that you create the greatest likelihood of committing future crimes, and I'm looking specifically at your record and looking at — you've been convicted previously for an aggravated robbery — for attempted aggravated murder and aggravated robbery, and you have done significant time on both of those, 4 to 25 on that first one I mentioned, and yet you continue to offend. Since you were released on that second charge you've also committed the crime of aggravated menacing and a soliciting charge. All that together I think means that you pose the greatest likelihood of committing future crimes, and therefore I will sentence you to ten years on the aggravated robbery on Count One."
 {¶ 39} It is evident from the trial court's statements at the sentencing hearing that the court found that Defendant poses the greatest likelihood of committing future crimes, and that its reasons for that finding and the maximum prison term it imposed was Defendant's criminal history, which includes prior convictions for aggravated robbery, attempted aggravated murder, aggravated menacing and soliciting. Despite having served significant time in prison on some of those prior offenses, once released Defendant continued to reoffend. The trial court made the findings required by R.C. 2929.14(C) in order to impose a maximum sentence, and stated its reasons for imposing a maximum sentence. R.C. 2929.19(B)(2).
 {¶ 40} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, P.J. and Wolff, J., concur.