OPINION
{¶ 1} Defendant-appellant Ronald Lewis appeals from his conviction and sentence for Felonious Assault and Attempted Murder. Lewis contends that his conviction should be overturned because he was denied the effective assistance of counsel at trial. He further claims that prosecutorial misconduct, trial court bias, and the denial of his motion to appoint substitute counsel prior to trial prejudiced his right to a fair trial. Finally, Lewis contends that the trial court erred by sentencing him to more than the minimum possible sentence.
 {¶ 2} We conclude that Lewis has failed to demonstrate ineffective assistance of counsel, prosecutorial misconduct or trial court bias. We further conclude that the trial court did not abuse its discretion by denying Lewis's request for substitute counsel. Because the trial court relied upon a part of the Ohio felony sentencing statutes that has been declared unconstitutional, pursuant to State v. Foster,109 Ohio St. 3d 1, 2006-Ohio-856, Lewis's sentence is Reversed, and this cause is Remanded for re-sentencing in accordance with State v. Foster,
supra. In all other respects, the judgment of the trial court is Affirmed.
 I {¶ 3} One day in late February or early March of 2005, Lewis attended a card game. Michael Mundy also attended that game. At some point during the game, a dispute arose when Mundy accused Lewis of cheating. Mundy threatened Lewis and began poking him and using profane language. After about five minutes, Mundy apologized to Lewis and the other game participants.
 {¶ 4} Subsequently, on March 11, 2005, Lewis attended a card game at Acacia Mundy's residence. Acacia is the daughter of Michael Mundy. Many of the same persons and participants, including Michael Mundy, that had been present at the previous game were also present at this game. At some point in the evening, Lewis left the card table and went to the kitchen. As he returned from the kitchen to the game table, Lewis approached Michael Mundy from the back and began to stab Mundy in the back. A struggle ensued between Mundy and Lewis, and several of the other persons present joined the fray in an attempt to disarm Lewis. Finally, Lewis was pushed down a staircase at which point he fled the scene. Police were called to the scene, and Mundy was transported to the hospital. He suffered from stab wounds to the neck, chest, face and arm. None of the injuries were life threatening.
 {¶ 5} After tending to Mundy, police officers began searching for Lewis. Lewis was located a few blocks away, hiding in some bushes beside a fence. When Lewis was ordered to surrender, he stood up and identified himself as the individual for whom the police were searching. Lewis also pointed out the location of the knife used in the attack. After Lewis was placed under arrest he stated that he had a "lengthy medical history," and began to complain of pain. The officers then had Lewis transported to the hospital.
 {¶ 6} An officer interviewed Lewis while he was in the emergency room. The interview was taped. During the interview, Lewis was reminded of his rights and he indicated that he understood those rights. When asked about the events of the evening, Lewis kept repeating that he could not recall anything other than "waking up" at the bottom of some stairs.
 {¶ 7} Lewis was indicted and tried by a jury. At trial, the State presented the testimony of Mundy, various police officers, and four other persons present at the incident. All of these witnesses testified that Lewis approached Mundy from the back and began stabbing. Lewis testified at trial and also presented the testimony of one other witness to the incident. Both Lewis and his witness corroborated the testimony presented by the State's witnesses. Lewis also testified that he was frightened of Mundy as a result of the incident at the prior card game, and because of several other clashes that had occurred between the two.
 {¶ 8} Lewis was convicted as charged, and sentenced accordingly. From his conviction and sentence, Lewis appeals.
 II {¶ 9} Lewis's First Assignment of Error states as follows:
 {¶ 10} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 11} In order to demonstrate ineffective assistance of counsel, Lewis must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance.Strickland v. Washington (1984), 466 U.S. 668; State v.Bradley (1989), 42 Ohio St.3d 136. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland, 466 U.S. at 694; Bradley, 42 Ohio St.3d at 142.
 {¶ 12} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See Strickland, 466 U.S. at 689. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id.
 {¶ 13} Lewis claims that his counsel was ineffective in numerous respects. First, he contends that counsel was ineffective for failing to object to the testimony of State's witness, David Deutsch, M.D., a general surgeon who was consulted by hospital emergency personnel in connection with the determination whether surgical intervention was indicated with regard to Mundy's chest and neck wounds.
 {¶ 14} Of relevance to this argument, Lewis refers us to three separate instances in the trial transcript wherein the prosecutor asked Dr. Deutsch about the depth of a stab wound to Mundy's right upper arm and the depth of cuts to Mundy's face. Deutsch responded by indicating that, as he recalled, the arm wound was reported to be six centimeters deep and that he did not know how deep the cuts to the face were. Deutsch also indicated that emergency room notes should be referenced in order to properly answer the questions about the depth of those injuries.
 {¶ 15} Lewis contends that his counsel should have objected to these questions because Deutsch "had no personal knowledge of the injuries or that, even if he did, he did not independently recall the wounds." In other words, Lewis contends that any testimony by Dr. Deutsch regarding Mundy's arm and facial injuries constituted hearsay because Deutsch was not part of the emergency department personnel who initially treated Mundy for those wounds. He also contends that this testimony was prejudicial, given that "the other wounds were superficial with the exception of the neck wound, which was non-life threatening."
 {¶ 16} Even if this testimony was hearsay, we cannot find that an objection thereto would have changed the outcome of the trial. The testimony in issue was a small part of relevant, proper evidence presented by the doctor. More importantly, we cannot say that Dr. Deutsch's testimony in this regard was based upon hearsay evidence. Dr. Deutsch was called in by the emergency department to consult and determine whether surgical intervention was indicated with regard to the chest and neck injuries suffered by Mundy. The record reflects that the doctor performed an examination of Mundy at that time. Furthermore, it appears that the doctor learned about the nature of the injuries while he was taking Mundy's medical history. Thus, the testimony would constitute an exception to the hearsay rule. See, Evid.R. 803(4). Therefore, we find this argument lacks merit.
 {¶ 17} Lewis was also examined by Dr. Deutsch at the emergency room. He claims that defense counsel was ineffective for failing to object to the following testimony about his treatment by Dr. Deutsch:
 {¶ 18} "Prosecutor: Did the Defendant make any statements to you, as part of your history did you get a statement or version from the Defendant as to what occurred that led to this altercation?
 {¶ 19} "Dr. Deutsch: I have to make reference to my dictate history and physical and records that I have. * * * I can't say if he gave a detailed history of why the stabbing occurred. And I get my history from various sources. What I say is that he was involved in an altercation in which he apparently stabbed an acquaintance several times when they had a disagreement. I can't tell you exactly if he told me that or if that is from witnesses. * * * And from the emergency squad. He did tell me he was jumped and then fell down 20 to 30 stairs and does not remember much that happened immediately before that."
 {¶ 20} Lewis argues that "any portion of this testimony generated by unidentified persons who did not testify at trial constitutes hearsay and is unreliable [and that] the remainder of the testimony was admitted in violation of [his] patient-physician privilege."
 {¶ 21} While defense counsel could have invoked the doctor-patient privilege on behalf of his client, we cannot say that the failure to do so constituted ineffective assistance. The testimony elicited in this regard was merely a reiteration of testimony elicited from other trial witnesses and even from Lewis, himself.
 {¶ 22} Next, Lewis argues that trial counsel was ineffective for failing to raise objections to the improper comments made by the prosecutor during closing argument. As noted in Part III, below, we find no prejudicial error arising from the prosecutor's closing argument. Accordingly, we conclude that defense counsel was not ineffective for failing to object thereto.
 {¶ 23} Lewis also claims that defense counsel failed to provide him "zealous representation during closing argument." Apparently this argument stems from his claim that counsel all but conceded that Lewis had committed the offense of Felonious Assault. Lewis also contends that counsel's argument was incoherent, and that it was contradictory to his claim that he did not intend to kill Mundy.
 {¶ 24} We have reviewed the entire closing argument presented by defense counsel and note that counsel did the best that could be done with a difficult case. There can be no doubt from the facts of this case that Lewis stabbed Mundy with a knife. Thus, rather than focus on a foregone conclusion on the Felonious Assault charge, counsel attempted to focus the jury on the argument that Lewis did not intend to kill Mundy. We find counsel's arguments in this regard, while maybe not the most artfully phrased, not to have been so deficient as to constitute ineffective counsel.
 {¶ 25} Lewis claims that counsel was ineffective for failing to "lodge other appropriate objections." Lewis contends that counsel should have objected to the testimony of a witness who stated that the victim was a "big man" and that "anyone else would not have survived" the attack. However, from our review of the record, we conclude that defense counsel did lodge a timely objection. Thus, this claim lacks merit.
 {¶ 26} Lewis next claims that counsel should have objected when the prosecutor, while questioning him on cross-examination, stated that it appeared that Lewis was "playing a game" with the jury. While we do find that this statement is improper, we also note that it was made in response to apparent inconsistencies in Lewis's testimony. We conclude that it was therefore reasonable for defense counsel to have decided that it was not in Lewis's best interest to draw more attention to these apparent inconsistencies by interposing an objection.
 {¶ 27} Next, Lewis lists several pages of transcript that he claims show that counsel failed to object when "speculative testimony" was introduced and when the prosecutor posed questions that constituted testimony rather than questions. We have reviewed these pages and find these claims unsubstantiated by the record.
 {¶ 28} Lewis next argues that defense counsel should have objected to the admission of certain physical evidence, specifically photographic exhibits and the knife used in the attack. He claims that the pictures were not authenticated. However, we note that the conditions depicted in the pictures were verified as accurate by police or other witnesses. Additionally, Lewis claims that the knife admitted in evidence was inadmissible because it was "inexplicably bent," and there was no testimony regarding its condition prior to the attack. We disagree. The police officers testified that the knife was recovered from the ground on the "exact spot" where they found Lewis lying. There was also testimony that Lewis pointed out the knife to them. From this record, there appears to be no question that the knife admitted in evidence was the knife used in the crime. Thus, we find no error in its admission. and no error in defense counsel's failure to object thereto.
 {¶ 29} Finally, Lewis contends that his counsel was ineffective because he failed to file a motion to suppress his statements made to the police after his arrest. In support, he claims that he was "very intoxicated," and that he does not remember responding to the questions posed by the officers.
 {¶ 30} We reject this claim. The officers who arrested Lewis testified that when they located him, Lewis was lucid, alert and oriented. While Lewis was in the emergency room, an officer audio-taped his conversation with Lewis, wherein Lewis was asked about the incident. A review of that audiotape does not demonstrate that Lewis was intoxicated. Moreover, there is no indication that the medical staff found any evidence of intoxication.
 {¶ 31} As stated above, Lewis must show that but for the above-cited instances, he would not have been convicted of Felonious Assault and Attempted Murder. We conclude that he has not made such a showing from this record. We note that the evidence regarding the stabbing in this case is clear, unequivocal and unrefuted. Lewis attacked Mundy from behind, and stabbed him seven times with a paring knife. The only true dispute in this case was whether Lewis intended to kill Mundy, and whether the jury could convict him of Attempted Murder. Given the testimony of all the witnesses, including Lewis's testimony that he attacked Mundy from behind, stabbing Mundy repeatedly, we cannot say that the outcome would have been different.
 {¶ 32} The First Assignment of Error is overruled.
 III {¶ 33} The Second Assignment of Error is as follows:
 {¶ 34} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 35} Lewis contends that the conduct of the prosecutor during closing was improper and deprived him of a fair trial. Specifically, he argues that the prosecutor engaged in a pattern of misconduct by making arguments that were based upon facts not proved at trial and upon personal opinion.
 {¶ 36} Prosecutorial misconduct exists where statements made by the prosecutor are improper and the improper statements prejudicially affect substantial rights of the defendant. Statev. Lott (1990), 51 Ohio St.3d 160, 165. "`The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" Id. at 166, citations omitted. To determine whether the prosecutor's statements were prejudicial, we must review closing arguments in their entirety. State v. Moritz (1980),63 Ohio St.2d 150, 157. Prosecutors and defense counsel have a wide degree of latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. Lott, 51 Ohio St.3d at 165.
 {¶ 37} We turn to Lewis's first argument in this regard. Lewis claims that the prosecutor's argument that the knife used to stab Mundy was bent following the incident was improper because there was no evidence regarding the condition of the knife prior to the stabbing. We cannot say that this was improper or that it rises to the level of prosecutorial misconduct, since it was a correct statement with regard to the condition of the knife used in the stabbing as collected by the police for evidence.
 {¶ 38} Next, Lewis contends that the prosecutor alluded to facts not supported by the evidence. Specifically, the prosecutor stated that the victim was "pinned to the wall," that he was stabbed repeatedly in the neck, that there was "blood everywhere" at the scene, that the other people at the scene were angry at Lewis, and that Lewis was not injured in the scuffle.
 {¶ 39} A review of the evidence indicates that there was blood at the scene on the wall and on the floor. Thus, we find no misconduct on the part of the prosecutor in this regard. We do, however, find that the prosecutor mistakenly stated that Mundy was pinned to the wall and repeatedly stabbed in the neck, that the other people at the scene were angry, and that Lewis was not injured in the scuffle. The evidence shows that Mundy suffered only one stab wound to the neck, although he was stabbed repeatedly in other parts of his body. There is no testimony that the people at the scene were angry, but an inference that they were angry at Lewis is not unreasonable, considering that several of the people at the scene were related to Mundy, or friends of his. Also, from the record it is not clear whether or when Lewis may have been injured. If he was injured, it does not appear that he was seriously injured. However, these three isolated mis-statements, which do not appear to have been deliberately made, do not rise to the level of reversible prosecutorial misconduct, because we conclude that they did not affect the fairness of the trial.
 {¶ 40} The Second Assignment of Error is overruled.
 IV {¶ 41} The Third Assignment of Error provides as follows:
 {¶ 42} "APPELLANT WAS DEPRIVED OF FAIRNESS BEFORE AND DURING HIS TRIAL AND AT SENTENCING BECAUSE OF THE COURT'S BIASED ATTITUDE."
 {¶ 43} Lewis contends that the trial court displayed a biased attitude by exhibiting a desire to "get rid of the case." Specifically, he claims that the trial court made a determination of guilt prior to hearing Lewis's testimony, and that the trial court relied upon a "stale" pre-sentence investigation report for purposes of imposing sentence.
 {¶ 44} From our review of the record, we find no evidence of bias with regard to either of the cited arguments. First we address the claim that the pre-sentence report was stale, and note that although the trial court did use a pre-sentence investigation from Lewis's prior conviction for Receiving Stolen Property, there is nothing in the record to indicate that the information therein was incorrect or that its use prejudiced Lewis. While it would be preferable for a trial court to utilize a newer pre-sentence investigation report, we cannot say that this demonstrates bias.
 {¶ 45} Second, we turn to the claim that the trial judge's statement that he had "heard enough about this case," demonstrates that the trial court had predetermined Lewis's guilt. The relevant facts are as follows. Following the direct examination of Lewis's first witness, Lewis informed the trial court that he wished to enter a plea of no contest. The State indicated that it would only accept a guilty plea to all charges and that it would recommend a maximum sentence. The trial court then recommended that the parties finish the examination of the witness and that counsel inform Lewis of the State's stance on the plea issue. The trial court further stated that, at thatpoint in the proceedings, the only option was to plead guilty as charged, and to proceed to sentencing "fairly quickly." The trial judge further stated that he had "heard enough about this case."
 {¶ 46} This statement was made after Lewis's own witness indicated that Lewis had repeatedly stabbed the victim. From the context of the statement, it appears that the trial court was merely trying to indicate that sentencing could take place quickly, because the testimony in the record already provided a substantial context for the trial court's sentencing decision, not that the trial court had "made up its mind," either as to guilt or punishment. In any event, the question of Lewis's guilt or innocence was decided by the jury, not the trial judge. Furthermore, as stated above, we have found nothing in the record to support a claim of bias. From our review of the entire record, it appears that the trial judge conducted the trial in a fair and impartial manner.
 {¶ 47} The Third Assignment of Error is overruled.
 V {¶ 48} The Fourth Assignment of Error states as follows:
 {¶ 49} `THE TRIAL COURT ERRED IN IMPOSING MORE THAN THE MINIMUM PRISON TERM IN RELIANCE ON FACTS NOT FOUND BEYOND A REASONABLE DOUBT BY A JURY."
 {¶ 50} Lewis contends that the trial court erred with regard to the imposition of sentence by imposing more than the minimum prison term.
 {¶ 51} The Supreme Court of Ohio recently held that parts of Ohio's felony sentencing scheme are unconstitutional, including R.C. 2929.14(B), which applied to Lewis's sentencing. State v.Foster, 109 Ohio St. 3d 1, 2006-Ohio-856. The Supreme Court held that R.C. 2929.14(B) is unconstitutional because it requires judicial finding of facts not proven to a jury beyond a reasonable doubt, or admitted by the defendant, before imposition of more than the minimum prison term. Foster at ¶ 61, ¶ 83. Accordingly, the Supreme Court severed the provisions that it found to be unconstitutional, including R.C. 2929.14(B). Id. at ¶ 99. Foster further instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Id. at ¶ 104.
 {¶ 52} The Fourth Assignment of Error is sustained.
 VI {¶ 53} Lewis's Fifth Assignment of Error states as follows:
 {¶ 54} "THE TRIAL COURT ERRED IN IGNORING AND THEN BELATEDLY OVERRULING APPELLANT'S REQUEST FOR NEW COUNSEL."
 {¶ 55} Lewis contends that "well before trial, on perhaps April 8, 2005, [he] sent a letter to the trial court requesting new counsel." He contends that the trial court ignored that request until the day trial began. He also claims that the trial court failed to adequately inquire into the basis for his request. Therefore, he argues that the trial court abused its discretion.
 {¶ 56} An indigent defendant has a right to competent representation by his court-appointed attorney, but he has no right to have a particular attorney represent him, and must demonstrate "good cause" to warrant substitution of court-appointed counsel. State v. Coleman, 2004-Ohio-1305, Montgomery App. No. 19862, ¶ 23. "Good cause" for this purpose includes a complete breakdown in communication between attorney and client. Id. Hostility, disagreement over trial tactics, tension, or personal conflicts between attorney and client are insufficient to justify a change in appointed counsel when they do not interfere with the preparation and presentation of a competent defense. Id. at ¶ 25. The trial court's decision in this regard is reviewed under an abuse-of-discretion standard. Id. at ¶ 26.
 {¶ 57} We begin by noting that the record does not contain any reference to the letter that Lewis contends he sent the trial court seeking new counsel. Instead, the record shows that defense counsel filed a motion to withdraw and for the appointment of new counsel on May 12, 2002. The trial court did not address the motion until the morning of trial. At that time, the trial court conducted a lengthy inquiry into the basis for Lewis's request.
 {¶ 58} The gist of Lewis's complaint about his counsel involved his dissatisfaction with counsel's representation. He stated that counsel was "evasive" and "never seemed to be interested in what happened or how it happened." He further claimed that counsel never asked him questions regarding the incident and that counsel was "not trying to represent [Lewis] in his fullest capacity." Lewis also claimed that counsel had failed to locate two "potential" witnesses for trial. However, Lewis admitted that he did not know the last name or addresses of these witnesses. Finally, Lewis admitted that he had not seen counsel do anything wrong, but that he believed that counsel was trying to "get [him] railroaded."
 {¶ 59} The trial court then inquired into the steps defense counsel had taken to prepare for the trial. Counsel stated that he did meet with Lewis and that he interviewed him with regard to the incident and to the prior history between Lewis and Mundy. Counsel stated that he reviewed medical records, and that he believed that the medical evidence would be the most helpful to Lewis's defense against the charge of Attempted Murder. Counsel further stated that he had obtained discovery and that he had provided a copy of that to Lewis. He stated that he worked on the case outside of Lewis's presence. Finally, he indicated that he was unable to locate the two witnesses Lewis wished to present at trial, because he was unable to get last names or addresses for the witnesses.
 {¶ 60} The trial court found that defense counsel appeared "fully prepared" for trial and denied the motion. We find no abuse of discretion. We conclude that the trial court did conduct a sufficient inquiry into Lewis's claims. Moreover, we note that a review of the record indicates that counsel was well-prepared for trial and that counsel did an admirable job of attempting to defend a difficult case. Therefore, we conclude that the trial court did not err in denying Lewis's motion to substitute counsel.
 {¶ 61} The Fifth Assignment of Error is overruled.
 VII {¶ 62} The Fourth Assignment of Error having been sustained, and all other assignments of error having been overruled, the sentence imposed by the trial court is Reversed, and this cause is Remanded for resentencing in accordance with State v.Foster, supra. The judgment of the trial court is Affirmed in all other respects.
Brogan and Donovan, JJ., concur.