[Cite as *State v. Shelly*, 2011-Ohio-4301.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | | |
| --- | --- | --- |
| STATE OF OHIO | | C.A. No.    10CA0032 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| TYRONE D. SHELLY | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No.    09-CR-0503 |

DECISION AND JOURNAL ENTRY

Dated: August 29, 2011

DICKINSON, Judge.

## INTRODUCTION

{¶1}    Around noon on a fall day, Tonya Myers walked out of her bathroom and found a strange man in her living room admiring her flat-screen television. The man, Tyrone Shelly, fled, was caught by police, and, following a bench trial, was convicted of burglary. He has appealed and assigned four errors. We affirm because his convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, and the trial court neither improperly shifted the burden of proof to him nor committed plain error by considering a victim impact statement and a stale pre-sentence investigation report.

## BACKGROUND

{¶2}    Tyrone Shelly is a heroin addict who uses approximately every six to eight hours. He and his girlfriend, Kellyn Ickes, arrived at Tonya Myers's home in Wooster in a maroon Buick. Ms. Ickes approached the house and knocked on the front door, but no one answered.

Ms. Myers heard the knocking, but decided not to answer because she was not expecting anybody. On her way back to the car, where Mr. Shelly was waiting, Ms. Ickes looked in a window of the house and saw no one. Mr. Shelly then went around to the back of the house and entered through the back door. Once inside, he walked through the kitchen and into Ms. Myers's son's bedroom. A few minutes later, Ms. Myers came out of the bathroom and found Mr. Shelly standing in her living room. She asked him who he was and demanded that he leave. He immediately fled out the back door, got in the Buick, and, along with Ms. Ickes, drove away.

{¶3} After Mr. Shelly and Ms. Ickes left, Ms. Myers called 911. Lieutenant James Henry was the first to arrive at her house. According to him, Ms. Myers appeared shaky and frightened. Lieutenant Henry advised a second officer on the scene to check nearby surveillance videos for images of the car or suspect. About an hour later, another officer, Deputy Thomas Holmes, came to Ms. Myers's house and asked her to come to a nearby gas station to see whether a car and man on the gas station's surveillance video were the ones that had been at her home. She confirmed that the car and man on the video were the ones she had seen.

{¶4} At about 1:45 p.m., Deputy Holmes saw a maroon Buick drive past him. He pursued it and tried to make a traffic stop as it pulled into the driveway of a house. Mr. Shelly got out of the car and ran in the house. Police surrounded the house and demanded that he surrender. After about five minutes, he came out wearing different clothes, and the police took him into custody.

SUFFICIENCY

{¶5} Mr. Shelly's first assignment of error is that there was insufficient evidence to convict him of burglary. The trial court convicted him of violating Section 2911.12(A)(2) of the Ohio Revised Code. That section defines and prohibits burglary: "[n]o person, by force, stealth,

or deception, shall . . . . [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]"

{¶6} Whether there is sufficient evidence to support a conviction is a question of law that we review de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. 04CA008554, 2005-Ohio-990, at ¶33. We must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

## Intent to Commit Theft

{¶7} According to Mr. Shelly, the State failed to present any evidence that he was in Ms. Myers's house with the purpose to commit a crime. He has challenged the trial court's determination that he was there to steal to support his drug addiction. He has noted that his mother testified that Ms. Ickes could make as much as $1200 in one weekend by dancing and that, therefore, he did not need to steal. He has argued that the State's only evidence that he was desperate for money was that he was unemployed and had asked his mother for $20 the night before to buy carpet shampoo. According to Mr. Shelly, he was attempting to meet up with his drug supplier, but went into the wrong house.

{¶8} The State has argued that several factors show that Mr. Shelly intended to commit theft inside Ms. Meyers's house. It has noted that, when Mr. Shelly and Ms. Ickes arrived at Ms.

Myers's house, Ms. Ickes approached it to check if anyone was home. After it appeared to them that the house was unoccupied, Mr. Shelly entered through the back door. When Ms. Myers discovered him in her home, he was looking at her television and saying "wow." The State has also pointed out that, when Mr. Shelly saw Ms. Myers, he said "oh shit" and immediately fled instead of telling her he was there by mistake. The State has further noted that, when Mr. Shelly was pulled over, he ran from his vehicle into his grandmother's house and changed clothes.

{¶9} Mr. Shelly has admitted that he is addicted to heroin and needs to get high multiple times a day. The State has suggested that someone in Mr. Shelly's condition would do anything to secure drugs.

{¶10} Viewing the evidence in a light most favorable to the State, there was sufficient evidence for the trial court to find that Mr. Shelly intended to commit theft. When someone, without permission, approaches and enters a house that appears empty and then flees when he is caught, without giving an explanation, it is logical to infer that he intended to steal something from the house.

Force, Stealth, or Deception

{¶11} Mr. Shelly testified that he thought the house he was entering belonged to his drug supplier's mother. He has argued that, regardless of whether he trespassed in Ms. Myers's house, there was insufficient evidence to show that he did so by force, stealth, or deception. To support this claim, he has argued that there is no evidence of a forced entry.

{¶12} Force is defined in Section 2901.01(A)(1) of the Ohio Revised Code as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This Court has held that opening an unlocked door can be sufficient to show force under the burglary statutes. *State v. Shirley*, 9th Dist. No. 20569, 2002 WL 5177 at *2 (Jan. 2, 2002).

**{¶13}** Furthermore, there is evidence that Mr. Shelly entered the house by stealth or deception. As mentioned above, Mr. Shelly had Ms. Ickes knock on the front door and, when no one answered, he entered through the back door, which was not visible from the street. This is sufficient evidence to support the trial court's finding that Mr. Shelly entered by stealth or deception.

**{¶14}** A reasonable person could conclude that Mr. Shelly entered Ms. Myers's home by force, stealth, or deception with intent to commit a theft offense. Mr. Shelly's first assignment of error is overruled.

## MANIFEST WEIGHT

**{¶15}** Mr. Shelly's second assignment of error is that, even if there was sufficient evidence to convict him of burglary, his conviction is against the manifest weight of the evidence. "In determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

**{¶16}** Mr. Shelly has argued that the State's theory that he intended to steal for drug money is illogical because he would have needed money immediately and it would have taken him days to sell any stolen property for cash. He has also argued that he had no reason to steal for drug money because Ms. Ickes, who testified that she financed his drug habit, made plenty of money dancing. Further, Mr. Shelly has argued that there were text messages on his phone

between him and his drug supplier that showed that he was supposed to be buying drugs at the same time he was in Ms. Myers's house.

{¶17} Under Section 2911.21(A)(2) of the Ohio Revised Code, trespass requires a person to knowingly enter the premises of another without having privilege to do so. Under Section 2901.22(B), "[a] person acts knowingly . . . when he is aware that his conduct will probably cause a certain result or will be of a certain nature." Mr. Shelly has argued that the trial court lost its way by not believing that he entered Ms. Myers's house be mistake.

{¶18} Mr. Shelly has pointed to supposed text messages between him and his drug supplier to show that, around the same time he was in Ms. Myers's house, he was supposed to be purchasing drugs. He has also argued that he approached and entered the house in a way that someone who was privileged to be there would have done. He casually pulled in and out of the driveway and entered the house loudly.

{¶19} He has suggested that the trial court should have believed him because his mother was a credible witness. He has noted that she turned him in before for his drug addiction and there was no reason for the court to not believe her testimony. He has also argued that he and Ms. Ickes are credible, noting the similarities in their testimony and that of Ms. Myers. According to Mr. Shelly, because his mother's testimony and Ms. Ickes's testimony, regarding the events that took place, corroborated his own testimony, it was illogical for the court to not believe it.

{¶20} There were a number of facts in dispute, and it was up to the trial court to determine, after hearing all the evidence, what was true. The State has argued that the greater weight of the evidence shows that Mr. Shelly was in Mrs. Myers's house to commit theft and that he was not mistaken about his privilege to enter. It has disputed Mr. Shelly's claims by

noting that there was no evidence, other than the testimony of Mr. Shelly and his mother, that there were any text messages on his phone regarding his plans for that day. Regardless of whether the alleged text messages existed, however, Mr. Shelly still could have been at Ms. Myers's home to steal. Mr. Shelly admitted that he needed to get high multiple times a day. The evidence did not show Ms. Ickes was an unlimited source of drug money, nor was there evidence that he even had enough money for drugs that day. The police found only $10 in his car. Even if he did have money to buy drugs that day, he still could have intended to steal property to sell for future drug purchases. It was reasonable for the court to believe that a person with a drug addiction, like Mr. Shelly, would steal to secure drugs.

{¶21} The State has also argued that, after Ms. Myers confronted Mr. Shelly, his reaction was not a reaction consistent with mistake. He did not attempt to explain why he was in her home, but rather fled out the back door and immediately left the property.

{¶22} In this case there waere conflicting evidence and arguments regarding why Mr. Shelly was in Ms. Myers's house. The trial court chose not to believe Mr. Shelly's claim that he thought he had a privilege to enter the house and that he was there to purchase drugs. At trial, he claimed that, on the morning of the incident, his supplier told him to meet him at his mother's house. Mr. Shelly claimed his supplier told him the house was on East Lincolnway, two houses before the Bell Store close to County Road 44. When Mr. Shelly arrived at the house he claimed he thought was his supplier's mother's house, it was actually Ms. Myers's house.

{¶23} Mr. Shelly had lived close to Ms. Myers for over twelve years and admitted that he had walked by her house many times. The house is right next to a large tractor company, which would have made the location memorable. Mr. Shelly had been to his drug supplier's mother's house once before, and the court found his story about getting the houses mixed up

unconvincing. Mr. Shelly also never gave the address of his supplier's mother's house to support his claim that he mistakenly entered the wrong house. He asked the court to take him at his word that the location that his supplier told him was his mother's house was the exact location of Ms. Myers's house. Mr. Shelly presented no evidence that his supplier's mother lived on the same street or anywhere nearby to make his story plausible.

{¶24} The trial court chose not to believe Mr. Shelly's claim that he mistakenly entered Ms. Myers's house because he thought he was there to purchase drugs. We conclude that the trial court did not clearly lose its way and create a manifest miscarriage of justice when it concluded that Mr. Shelly knowingly trespassed in Ms. Myers's house intending to steal. His second assignment of error is overruled.

BURDEN SHIFTING

{¶25} Mr. Shelly's third assignment of error is that the trial court incorrectly shifted the burden of proof to him on the issue of accident or mistake of fact. At trial, he claimed that the house he entered was the house he believed his supplier's mother lived in and where he was supposed to meet his supplier to purchase drugs. When the prosecution asked Mr. Shelly on cross examination for the address of that house, his lawyer objected and the trial court overruled his objection. Mr. Shelly has argued that the trial court implicitly shifted the burden of proof to him when it allowed the state to demand details about the exact location of his drug supplier's mother's house. He has argued that the court required him to prove his lack of guilt when it ruled he had to answer the question.

{¶26} The trial court did not shift the burden of proof to Mr. Shelly. It simply allowed normal cross examination, determining only that the question was proper impeachment and, therefore, appropriate. Additionally, when the trial court stated, in its reasoning for its

determination of guilt, that Mr. Shelly did not provide the address, it was simply giving a reason why it found that Mr. Shelly was not credible. Mr. Shelly claimed that he was in the wrong house by mistake, yet did not know his supplier's last name or his supplier's mother's name. He also claimed that he had been to his supplier's mother's house a month prior but could not remember the location, even though it was supposedly within a quarter mile of his own house. These details, in addition to his failing to give the address, were reasons why the trial court did not believe Mr. Shelly's version of the facts. Mr. Shelly's third assignment of error is overruled.

SENTENCE

{¶27} Mr. Shelly's fourth assignment of error is that the trial court incorrectly considered a victim impact statement and a stale pre-sentence investigation report when it sentenced him. During sentencing, the State presented a statement on behalf of Ms. Myers that explained the impact the incident had had on her life. The court also used a fifteen-year-old pre-sentence investigation report regarding Mr. Shelly's previous criminal history.

{¶28} Under Section 2947.05.1(A) of the Ohio Revised Code, "[i]n all criminal cases in which a person is convicted of . . . a felony, if the offender, in committing the offense, caused, attempted to cause, threatened to cause, or created a risk of physical harm to the victim of the offense, the court, prior to sentencing the offender, shall order the preparation of a victim impact statement[.]" In addition, if using a stale pre-sentence investigation report is prejudicial, the sentence may be reversed. See *State v. Lewis*, 2d Dist. No. 2005-CA-66, 2006-Ohio-4402, at ¶44.

{¶29} Absent plain error, an appellate court need not consider an error a defendant failed to call to the trial court's attention at a time when it could have been avoided. *State v. Williams*, 51 Ohio St. 2d 112, paragraph one of the syllabus (1977). Mr. Shelly did not object to the use of

either document at trial and, accordingly, has forfeited all but plain error. See Crim. R. 52(B). Plain errors must be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St. 2d 91, 97 (1978). For Mr. Shelly to prevail on his claim, he must show that, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Murphy*, 91 Ohio St. 3d 516, 532 (2001) (quoting *State v. Campbell*, 69 Ohio St. 3d 38, 41 (1994)).

{¶30} Mr. Shelly has argued that there was no showing that he posed any threat of physical harm to Ms. Myers when he was in her home. He has argued that his hands were in his pockets when Ms. Myers confronted him and that he did not have a weapon. He has also argued that he fled as soon as he realized he was not in the right house and did not threaten or attempt to harm Ms. Myers in any way.

{¶31} According to the State, it was appropriate for the court to consider the victim impact statement because the burglary of a home, in which the owner is present, creates a risk of physical harm to the owner. Additionally, it has argued that Section 2929.12(B) of the Ohio Revised Code requires the court to consider during sentencing psychological harm to the victim. Therefore, the victim impact statement did not prejudice Mr. Shelly because, under this section, the court could have considered the psychological effect on Ms. Myers regardless of whether she was in physical danger.

{¶32} The State has also argued that the appellant's old pre-sentence report did not prejudice Mr. Shelly because it was only used to determine his criminal history. The State has pointed out that a person's prior criminal information does not change and is available to the court through other means. It has noted that Section 2929.12 of the Ohio Revised Code required

the court to consider Mr. Shelly's criminal history during sentencing, even if it had not had a pre-sentence investigation report.

{¶33} We conclude that Mr. Shelly has not shown that the trial court committed plain error. The victim impact statement was properly used, and, therefore, its use did not constitute plain error. There is also no indication that the outcome would have been different if either document had not been used. As stated, psychological impact on Ms. Myers and Mr. Shelly's criminal history would still have been considered at sentencing. Mr. Shelly's fourth assignment of error is overruled.

CONCLUSION

{¶34} Mr. Shelly's conviction for burglary is based on sufficient evidence and is not against the manifest weight of the evidence. The trial court did not shift the burden of proof to Mr. Shelly, and its use of a victim impact statement and stale pre-sentence investigation report did not constitute plain error. Mr. Shelly's assignments of error are overruled, and the judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR

APPEARANCES:

CLARKE W. OWENS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellee.