[Cite as *State v. Jones*, 2014-Ohio-1716.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13 COA 012 |
| ELMER JONES, III | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 12 CRI 045 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 21, 2014 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| RAMONA FRANCESCONI ROGERS | MELISSA M. PRENDERGAST |
| PROSECUTING ATTORNEY | ASSISTANT STATE PUBLIC |
| PAUL T. LANGE | DEFENDER |
| ASSISTANT PROSECUTOR | 250 East Broad Street |
| 110 Cottage Street, Third Floor | Suite 1400 |
| Ashland, Ohio 44805 | Columbus, Ohio 43215 |

*Wise, J.*

**{¶1}** Appellant Elmer Jones, III appeals the decision of the Ashland Court of Common Pleas denying his motion to suppress.

**{¶2}** Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** In March, 2012, Officer Kim Mager, a child abuse investigator, began investigating an allegation that a young boy, identified in this case as John Doe, was sexually molested by Elmer Joseph Jones, the Appellant. (Supp. T. at 8).

**{¶4}** On March 28, 2012, Officer Mager went to Appellant's home to retrieve some evidence in an unrelated case. (*Id.* at 11-12). At the start of this encounter, Officer Mager told Appellant he was not under arrest, that he did not have to talk to her, and that he could tell her to leave at any time. (*Id.* at 11). While Officer Mager and Appellant discussed another individual accused of molesting children, Appellant asked Officer Mager questions regarding the potential punishment for this other individual and the investigative process. (*Id.* at 13-14).

**{¶5}** During this encounter, Officer Mager also told Appellant that the sexual things that happened between him and John Doe and John Doe's siblings should not have happened. (*Id.* at 15). Appellant responded: "I know, Kim, and I can tell you it's not happening now, because I am staying away from them." *Id.*

**{¶6}** At the conclusion of this twenty-one minute encounter on March 28, 2012, Appellant himself ended the encounter by telling Officer Mager that he had to leave. (*Id.* at 18-19). Appellant told Officer Mager that if she wanted to speak with him again she could come and talk to him at the Kroc Center where he was a volunteer. (*Id.* at 19).

{¶7} On April 24, 2012, Officer Mager went to the Kroc Center and met with Appellant. (*Id.* at 20). She was dressed in plain clothes and used an unmarked law enforcement vehicle. (*Id.* at 23). The Kroc Center is a community center located in Ashland, Ohio. Officer Mager knew Appellant prior to this investigation and it was not uncommon for her to stop by the Kroc Center. (*Id.* at 21-22).

{¶8} When Officer Mager first encountered Appellant at the Kroc Center, the two briefly engaged in a casual conversation in a common area. (*Id.* at 21). Officer Mager then asked Appellant if he would be comfortable talking to her in her car, which was parked in close proximity to the Kroc Center, or if there was somewhere else he would prefer. *Id.* Appellant said her car was fine. *Id.*

{¶9} During this interview, Officer Mager was seated in the driver's seat and Appellant was seated in the front passenger seat. (*Id.* at 24). The doors to the vehicle were unlocked. *Id.* Officer Mager advised Appellant that he was not under arrest, that he did not have to talk to her, and that he could walk away at any time. (*Id.* at 26).

{¶10} Appellant replied that he believed Officer Mager and that if she was going to arrest him, she would have done so inside of the Kroc Center. *Id.* Appellant further stated that if he were under arrest, Officer Mager would have handcuffed him. *Id.*

{¶11} During her testimony at the suppression hearing, Officer Mager noted that at one point in time towards the end of this interview, Appellant opened the car door and went back to the building to smoke a cigarette. (*Id.* at 24-25).

{¶12} The interview at the Kroc Center lasted approximately one hour and sixteen minutes. (*Id.* at 28). Officer Mager stated that Appellant made his first incriminating statement within the first sixteen or seventeen minutes. (*Id.* at 29).

{¶13} Officer Mager testified that, in her experience, it is not uncommon for a suspect to initially deny the allegations. (*Id.* at 30). In an attempt to obtain further information, Officer Mager repeatedly asked Appellant to be honest with her. *Id.* Appellant admitted to engaging in oral sex on two separate occasions with the young child identified as John Doe. Appellant also acknowledged to Officer Mager that he had the victim perform oral sex on him. (*Id.* at 17).

{¶14} Officer Mager did not arrest Appellant at the end of this interview at the Kroc Center, allowing him to return to work. (*Id.* at.32). The decision to arrest Appellant was made by Lieutenant Icenhour because of concerns that Appellant would be around children, and law enforcement was not certain they would be able to locate Appellant in the future. (*Id.* at 36-37).

{¶15} Following the arrest, Appellant was taken to the Ashland County Jail where he was interviewed for a second time by Officer Mager. (*Id.* at 37-38). At the start of the interview at the jail, Officer Mager advised Appellant of the *Miranda* warnings. (*Id.* at 38). Initially, Appellant retracted his prior admissions, but ultimately he confessed to engaging in anal sex and oral sex with the young victim. (*Id.* at 11).

{¶16} The total time for both interviews was less than two hours. (Supp.T. at 47-48).

{¶17} On April 27, 2012, the Ashland County Grand Jury indicted Appellant on three counts of rape, all felonies of the first degree, and one count of Gross Sexual Imposition, a third degree felony.

{¶18} On July 20, 2012, Appellant filed a motion to suppress.

{¶19} On September 5, 2012, following a hearing on Appellant's suppression motion, the trial court denied Appellant's motion.

{¶20} In October, 2012, a jury trial commenced in this matter.

{¶21} On October 24, 2012, the jury found Appellant guilty of all three rape charges and the charge of gross sexual imposition.

{¶22} On January 16, 2013, the trial court sentenced Appellant to an aggregate prison term of thirty (30) years to life.

{¶23} Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶24} "I. THE TRIAL COURT ERRED WHEN IT DENIED MR. JONES' MOTION TO SUPPRESS. MR. JONES' STATEMENTS WERE OBTAINED THROUGH THE USE OF A COERCIVE SUCCESSIVE INTERROGATION TECHNIQUE, AND THE MID-INTERROGATION *MIRANDA* WARNINGS WERE INEFFECTIVE. MR. JONES' PRE- AND *POST-MIRANDA* STATEMENTS SHOULD HAVE BEEN SUPPRESSED. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

{¶25} "II. MR. JONES WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

**I.**

{¶26} In his First Assignment of Error, Appellant argues that the trial court erred in denying his motion to suppress. We disagree.

{¶27} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶28} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592, 621 N.E.2d 726 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d

37, 619 N.E.2d 1141 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶29} In the instant case, Appellant argues the trial court erred in not finding that the interview at the Kroc Center was a custodial interrogation and that the Miranda warnings were ineffective, having been read after Appellant's confession.

{¶30} Initially, we note that police are not required to give *Miranda* warnings to everyone they question, even when that questioning takes place in a police station, and the person being questioned is a suspect. *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891. Instead, Miranda warnings are only required for custodial interrogations. *Id.* "The ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* An interrogation is noncustodial if a reasonable person in the suspect's position would believe that he or she was free to leave. *State v. Gumm*, 73 Ohio St.3d 413 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870 (1980). In making such a determination, courts have considered the following factors:

{¶31} "(1) What was the location where the questioning took place-i.e., was the defendant comfortable and in a place a person would normally feel free to leave? * * *;

**{¶32}** "(2) Was the defendant a suspect at the time the interview began (bearing in mind that Miranda warnings are not required simply because the investigation has focused);

**{¶33}** "(3) Was the defendant's freedom to leave restricted in any way;

**{¶34}** "(4) Was the defendant handcuffed or told he was under arrest;

**{¶35}** "(5) Were threats made during the interrogation;

**{¶36}** "(6) Was the defendant physically intimidated during the interrogation;

**{¶37}** "(7) Did the police verbally dominate the interrogation;

**{¶38}** "(8) What was the defendant's purpose for being at the place where the questioning took place? * * *;

**{¶39}** "(9) Were neutral parties present at any point during the questioning;

**{¶40}** "(10) Did police take any action to overpower, trick, or coerce the defendant into making a statement." *State v. Estepp* (Nov. 26, 1997), Montgomery App. No. 16279, citations omitted.

**{¶41}** Upon review, we find that the only factors in this list that weigh in favor of suppression are that Appellant was a suspect and that no neutral parties were present during the interview. However, those two factors alone are not enough to classify the interview as custodial. *See, e.g., Biros, supra*, at 440-41, 678 N.E.2d 891. *See, also*, *State v. Reeves,* Greene App. No. 2002-CA-4810, 2002-Ohio-4810; *State v. Abner,* Montgomery App. No. 20661, 2006-Ohio-4510. The remaining factors weigh in favor of a finding that the confessions in this case were knowingly, intelligently, and voluntarily given.

**{¶42}** Contrary to Appellant's claims, we do not find that Officer Mager created a situation in which Appellant felt that he was not free to leave. Appellant willingly agreed to speak with Officer Mager and had previously invited her to come to the Kroc Center and speak with him. Appellant willingly accompanied her to her vehicle, which was an unmarked car. Officer Mager was in plain clothes. Appellant was not handcuffed or otherwise restrained and was advised that he was not under arrest and was free to leave at any time. Appellant did, in fact, eventually leave Officer Mager's vehicle and return to work.

**{¶43}** For these reasons, we conclude that a reasonable person in Appellant's position would have understood he was not in custody. Therefore, *Miranda* warnings were not necessary, and his statements made during this interview were admissible.

**{¶44}** Additionally, we find that the statements made by Appellant in the second April 24, 2012, interview were also admissible.

**{¶45}** Appellant relies on *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159, 159 L.Ed.2d 643 L.Ed.3d 643, in arguing that his second confession was not admissible because it was tainted by the un-*Mirandized* first confession. However, we find this case is distinguishable from *Seibert. Seibert* challenged a police practice of not advising a suspect who is being interrogated of his *Miranda* rights, until after a confession is made and then promptly *Mirandizing* the suspect and questioning him again. The expectation is that the suspect will repeat his confession, and that this second confession, having been preceded by a recitation of the suspect's *Miranda* rights, will be admissible.

**{¶46}** As set forth above, Appellant was not in custody when he made his initial confession at the Kroc Center interview, and therefore, *Miranda* warnings were not necessary. More importantly, he returned to work following the interview rather than immediately being *Mirandized* and questioned a second time. Appellant's second confession came after Appellant was arrested, transported to the Ashland County Jail and interviewed a second time, not just minutes later as in *Seibert.*

**{¶47}** In this second interview, Appellant admitted to engaging in additional sexual acts with the victim in this case. During the Kroc Center interview, Appellant repeatedly denied engaging in anal sex with the victim, however confessed to same during the interview at the jail.

**{¶48}** Again, because Officer Mager was not obliged to read Appellant his *Miranda* warnings prior to the first confession, the absence of such warnings does not affect the voluntariness of the second confession.

**{¶49}** Based on the facts as presented in this case, we find that trial court did not err in denying Appellant's motion to suppress.

**{¶50}** Based on the foregoing, we find Appellant's First Assignment of Error not well-taken and overrule same.

**II.**

**{¶51}** In his Second Assignment of Error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

**{¶52}** Appellant insists that his counsel was ineffective for failing to cite *Missouri v. Seibert, supra*, in support of his motion to suppress.

**{¶53}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

**{¶54}** Based on our disposition of Appellant's First Assignment of Error, we do not find that counsel was ineffective for failing to cite *Missouri v. Seibert* in support of the motion to dismiss in this case. We further find that even if such was error, Appellant was not prejudiced by same.

**{¶55}** Appellant's Second Assignment of Error is overruled.

**{¶56}** For the foregoing reasons, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed.

By: Wise, J.
Gwin, P. J., and
Delaney, J., concur.


JWW/d 040