[Cite as *State v. Brock*, 2017-Ohio-759.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2016-CA-3 |
| | : | |
| v. | : | T.C. NO.   15CR120 |
| | : | |
| DALE L. BROCK | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____3rd____ day of _____March_____, 2017.

. . . . . . . . . .

R. KELLY ORMSBY, III, Atty. Reg. No. 0020615, Prosecuting Attorney, Courthouse, Third Floor, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

BRENT E. RAMBO, Atty. Reg. No. 0076969, 15 W. Fourth Street, Suite 250, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1}  Dale L. Brock appeals from a judgment of the Common Pleas Court of Darke County, which found him guilty on his guilty plea of one count of felonious assault.  The court sentenced him to prison for five years, imposed three years of mandatory post-release control, and ordered him to pay court costs.

{¶ 2}  For the following reasons, the judgment of the trial court will be affirmed.

### I.    Procedural History

{¶ 3}  On June 26, 2015, Brock was indicted on one count of attempted murder and two counts of felonious assault (serious physical harm and deadly weapon), related to an incident that occurred on May 2, 2015.

{¶ 4} On August 12, 2015, Brock filed a motion to suppress statements he had made to the police.   After a hearing, the trial court overruled this motion.

{¶ 5}  Trial was set for October 27 and 28, 2015, but a hearing was held on October 26 to discuss several issues, including plea negotiations and Brock's dissatisfaction with his attorney.   The trial court overruled, from the bench, Brock's request that a new attorney be appointed to represent him.   The same day, Brock entered a plea of guilty to one count of felonious assault (serious harm), in exchange for which the other counts were dismissed.   The court ordered a presentence investigation and, on December 7, Brock was sentenced as described above.

{¶ 6}  Brock raises two assignments of error on appeal.

### I.    Motion to Suppress

{¶ 7}  In his first assignment, Brock contends that the trial court should have granted his motion to suppress statements he made to the police, because he was in custody when the statements were made, he was not informed of his *Miranda* rights, and his statements were not voluntary.[1]

---

[1] A guilty plea waives any right to appeal a ruling on a motion to suppress or any other trial court error, except for errors in the plea itself.   *State v. Thomas,* 2d Dist. Montgomery No. 21829, 2007-Ohio-6908, ¶ 21, citing *State v. Kelley,* 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *State v. Crawford*, 2d Dist. Montgomery No. 27046, 2017-Ohio-308, ¶ 9.   As such, Brock's guilty plea waived his right to challenge

{¶ 8} In reviewing decisions on motions to suppress, an appellate court reviews the record to see if substantial evidence exists to support the trial court's ruling, bearing in mind that the trial court has the function of assessing credibility and weighing evidence. *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 48 (2d Dist.). However, in the particular area of custodial interrogations, the United States Supreme Court has said that whether a suspect is in custody is a mixed question of fact and law entitled to independent review. *Id.*, citing *State v. Smith,* 10th Dist. Franklin No. 96AP10-1281, 1997 WL 304418 (June 3, 1997), and others.

{¶ 9} Police are not required to give *Miranda* warnings to every person they question, even if the person being questioned is a suspect. *Id.* at ¶ 49; *State v. Biros,* 78 Ohio St.3d 426, 440, 678 N.E.2d 891 (1997). *Miranda* warnings are required only for custodial interrogations. *Biros* at 440. *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

{¶ 10} In reaching this determination, neither the subjective intent of the officer nor the subjective belief of the defendant is relevant. *Hatten* at ¶ 50. Instead, we have considered factors, such as the location of the interview, whether the defendant was a

---

any alleged error in the trial court's disposition of the motion to suppress. However, because the State has not argued that the issue was waived, we will address it.

suspect, whether the defendant's freedom to leave was restricted in any way, and whether there were threats or intimidation. *Id.*, citing *State v. Estepp,* 2d Dist. Montgomery No. 16279, 1997 WL 736501, *4 (Nov. 26, 1997).

{¶ 11} A confession is voluntary "absent evidence that [the defendant's] will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." *State v. Banks-Harvey,* 2d Dist. Montgomery No. 26786, 2016-Ohio-4715, ¶ 8, citing *State v. Jackson,* 2d Dist. Greene No. 02CA0001, 2002-Ohio-4680, ¶ 20. The voluntariness test considers "the totality of all the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation." *Id.*

{¶ 12} Brock's motion to suppress sought to exclude his statements to the police on two occasions. The parties agree that Brock was not informed of his *Miranda* rights prior to either of his two conversations with Detective Jason Marion of the Greenville Police Department. The evidence presented at the suppression hearing was as follows.

{¶ 13} Det. Marion testified that the incident he was investigating occurred on Saturday, May 2, 2015. On Monday, May 4, 2015, Marion placed a telephone call to Brock and asked if Brock would be willing to speak to Marion about the May 2 incident. The phone call lasted about one minute, and Brock agreed to come in to the Greenville Police Department later that day. Similarly, on June 18, Marion called Brock and asked him to come in for an interview, and Brock agreed.

{¶ 14} According to Det. Marion, on both occasions, he and Brock had one-on-one "friendly interviews" at which Brock was "cordial" and "cooperative." The interviews occurred in an unlocked interview room; Marion never indicated that Brock was not free

to leave, Brock never asked to leave, and Brock was not taken into custody on either occasion. Marion testified that he was sure he had told Brock that Brock was free to leave at any time. The first interview lasted approximately 40 minutes and included Brock's preparation of a written statement. In addition to the oral and written statements, Brock gave to Marion the knife that he (Brock) indicated had been used to stab the victim.

{¶ 15} During the first interview, Det. Marion left the interview room while Brock prepared his written statement. During this time, Marion consulted with the prosecutor about "how to proceed" and whether Brock should be arrested, despite his prior statement to Brock that Brock was free to leave. (The prosecutor did not indicate that Brock should be arrested.) Marion testified that he would have arrested Brock if the prosecutor had told him to do so.

{¶ 16} The second interview occurred on June 18, 2015, after Det. Marion again called Brock and requested that he come in "to provide some additional details from his first interview." During this interview, Brock again was not informed of his *Miranda* rights. The interview lasted 23 minutes, and then Brock was permitted to leave. Brock consented to have his mouth swabbed after Marion asked for a DNA sample. Brock also stated to Marion that the sample may not be necessary because Brock "was already in the system," i.e., he had previously been arrested for an offense that required him to submit DNA.

{¶ 17} The trial court found that Brock was not in custody at the time of either interview with Det. Marion because he was allowed to leave on both occasions and because the interviews did not occur "in a space which approximated a place of detention of custody." The trial court also found that the interview setting was not coercive, that

the interviews "were not long, physically exhausting or emotionally manipulating," that Det. Marion was not deceitful or overbearing, and that Brock was not impaired. The court concluded that, because there was no custodial interrogation on either occasion, *Miranda* warnings had not been required. The court further concluded that, under the totality of the circumstances, Brock's statements were voluntarily made and that his "right against self-incrimination" was not violated.

{¶ 18} In his brief, Brock contends that the trial court did not adequately consider the "10 factors that have to be weighed" in determining whether there was a degree of restraint associated with formal arrest, citing *State v. Jones*, 5th Dist. Ashland No. 13 COA 12, 2014-Ohio-1716. Although we reject Brock's suggestion that there is a rigid list of factors that a court must consider in making this assessment, we do not disagree that the factors listed in *Jones* – which that court adopted in reliance upon a case from this court, *State v. Estepp*, 2d Dist. Montgomery No. 16279, 1997 WL 736501 (Nov. 26, 1997) – are relevant in determining whether an interrogation was custodial. The factors listed in *Jones* and *Estepp* are as follows:

(1) What was the location where the questioning took place -i.e., was the defendant comfortable and in a place a person would normally feel free to leave? * * *;

(2) Was the defendant a suspect at the time the interview began (bearing in mind that *Miranda* warnings are not required simply because the investigation has focused);

(3) Was the defendant's freedom to leave restricted in any way;

(4) Was the defendant handcuffed or told he was under arrest;

(5) Were threats made during the interrogation;

(6) Was the defendant physically intimidated during the interrogation;

(7) Did the police verbally dominate the interrogation;

(8) What was the defendant's purpose for being at the place where the questioning took place? * * *;

(9) Were neutral parties present at any point during the questioning;

(10) Did police take any action to overpower, trick, or coerce the defendant into making a statement.

{¶ 19} Brock asserts that the trial court unduly focused on the first and fourth factors, "ignoring the rest," and that the totality of the circumstances supported the conclusion that he was in custody.

{¶ 20} "[A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' " *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

**{¶ 21}** We disagree with Brock that the trial court only considered the location of the interview and the fact that Brock was not told he was under arrest. The evidence offered at the hearing made clear that Brock was a suspect at the time of the interviews, that he was not restricted in any meaningful way from leaving, and that he was not threatened, intimidated, or dominated. As discussed in *Mathiason*, neither the location of the interview nor Brock's status as a suspect was conclusive as to the nature of his interaction with the police. Moreover, the fact that Brock was allowed to leave after each interview was entitled to substantial weight in determining whether the interviews were custodial. The trial court reasonably concluded, based on the totality of the circumstances, that Brock was not in custody when his statements were made and that his *Miranda* rights were not violated.

**{¶ 22}** The first assignment of error is overruled.

## II. Not Permitting Counsel to Withdraw

**{¶ 23}** In his second assignment of error, Brock contends that his relationship with his attorney was "irreparably damaged" and that the trial court unreasonably and arbitrarily denied Brock's request for new counsel.

**{¶ 24}** The decision whether to remove court-appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Coleman*, 2d Dist. Montgomery No. 26376, 2015-Ohio-5381, ¶ 12. An "abuse of discretion" implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams,* 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶ 25}** "An indigent defendant has no right to have a particular attorney of his own

choosing represent him.    He is entitled to competent representation by the attorney the court appoints for him.    Therefore, in order to demonstrate the good cause necessary to warrant removing court appointed counsel and substituting new counsel, defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel." *Coleman* at ¶ 10, citing *State v. Coleman,* 2d Dist. Montgomery No. 19862, 2004-Ohio-1305, ¶ 24. "Disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel.    Moreover, mere hostility, tension, and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense." *Id.* at ¶ 11.

{¶ 26} First, Brock argues that the court should have relied on "the attorney-client relationship and the timeliness of the request," rather than "on effectiveness or quality of representation."    We note that this position is contrary to the standard cited above, which places greater weight on the competence of counsel than on the interpersonal relationship between counsel and his or her client, unless that relationship jeopardizes the client's right to effective assistance of counsel.    Moreover, Brock's trial was scheduled for October 27 and 28, 2015, and his objection to counsel was first raised at a hearing on October 26.    Thus, the timing of his request did not weigh in his favor.

{¶ 27} At the October 26 hearing, the trial court questioned Brock about his dissatisfaction with his attorney, of which the court was aware through the jail staff. Brock stated that counsel had previously called him "Mr. Elliott" on two occasions; Mr. Elliott was the name of the victim in Brock's case.    Brock also expressed confusion about

his attorney's intention to speak to Mr. Elliott during his preparation for the case.

{¶ 28} Brock further stated that, the day before the hearing, when counsel came to see him in jail, counsel said that a man named Terry Paul wanted to discuss Brock's case; Paul apparently showed up at the jail, told Brock that he and the attorney went "back a long ways," and "tried to tell" Brock that Brock should "take this kind of deal." According to Brock, "Terry Paul is well-known and he likes Dave Elliott [the victim]." Brock was angry with counsel for talking with Paul about his case, which, in Brock's view, Paul had "nothing to do with * * * at all."

{¶ 29} Counsel presented a different version of events. Counsel said that he also represented Paul, and Paul brought up to counsel what he had heard "on the street" about Brock's case. Counsel denied telling Paul anything about Brock's case. Counsel also stated that, from statements Paul had made about Elliott (the victim), counsel did not believe that Paul "thought much" of Elliott. Counsel's understanding was that Brock and Paul were long-time friends.

{¶ 30} When counsel went to speak with Brock about a plea deal a few days before the hearing, he could tell that Brock was "struggling" with the decision; counsel asked if Brock would like to talk with Paul, and Brock said that he would. Paul later went to the jail and had a short conversation with Brock (at which counsel did not seem to be present).

{¶ 31} When Brock was offered the opportunity to respond to counsel's statements, he said that "if he [counsel] was going to ask somebody * * * to come talk to me [it] should have been James Colvin[,] which he's my priest. * * * [H]e'd be able to talk to me more civilly than Terry Paul would have been."

**{¶ 32}** The court responded to Brock's complaints as follows:

> * * * Sounds like Mr. Paul knew about the offer and that's not surprising even if it wasn't true. People start talking things on the internet like it is true, you know. As long as you were willing to see him at the time and didn't like what he said, it doesn't affect the relationship any. So I don't see that as a fundamental issue that leads to ineffective relationship or difficult relationship [with counsel].
>
> There's also no reason to try to replace one of the more experienced lawyers. * * * So I'm not going to allow a withdrawal of counsel for those circumstances.
>
> The fact that he [counsel] said wrong names a couple of times is understandable since it's a related name. Him talking to the victim makes a lot of sense quite honestly. That's the only way to try to figure out if the victim is cooperative or not. So that element demonstrates his effectiveness. So I'm not going to approve an attorney withdrawal.

**{¶ 33}** The day after the hearing, on October 27, 2015, a letter from Brock dated October 25 arrived at the court addressed to the judge. The letter raised the same issues that had been discussed at the hearing and asked for a different lawyer. The trial court did not file any additional response to the issues raised in the letter.

**{¶ 34}** The trial court did not abuse its discretion in concluding that any breakdown in trust between Brock and his attorney based on counsel's inadvertent use of the victim's name when referring to Brock and Paul's attempt to speak to Brock did not warrant appointment of different counsel. Brock's assertion that his belief that there was a

conflict of interest "should have, in and of itself, been enough" to appoint new counsel is simply incorrect.

**{¶ 35}** The second assignment of error is overruled.

### III.    Conclusion

**{¶ 36}**   The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

R. Kelly Ormsby, III
Brent E. Rambo
Hon. Jonathan P. Hein