[Cite as *State v. Johnson*, 2017-Ohio-5498.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26961 |
| | : | |
| v. | : | T.C. NO. 15-CR-2353 |
| | : | |
| KEITH L. JOHNSON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___23rd___ day of _____June_____, 2017.

. . . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Keith L. Johnson was found guilty by a jury in the Montgomery County Court of Common Pleas of one count of kidnapping (Count One), two counts of aggravated burglary (Counts Two and Three), and three counts of felonious assault (Counts Four, Five, and Six). Each of the counts included a firearm specification. The trial court

merged the aggravated burglary counts, two of the felonious assault counts (Counts Four and Five), and several of the firearm specifications, and it imposed a combination of consecutive and concurrent mandatory sentences totaling 22 years in prison.

{¶ 2} Johnson appeals from his convictions.   In his initial appellate brief, Johnson claims that his convictions for aggravated burglary (Counts Two and Three) and one of the felonious assault charges (Count Six) were based on insufficient evidence and were against the manifest weight of the evidence.   In a supplemental brief, Johnson also claims that the trial court erred when it failed to merge Counts Five and Six, both of which charged felonious assault (deadly weapon).   For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} The State's evidence at trial established the following facts.

{¶ 4} Johnson and Cynthia Steen[1] have known each other for approximately 28 years, and they have four children together, ranging in age from 6 to 23 years old.   They lived together in Detroit, Michigan, until Cynthia moved with the children to the Dayton area in 2013.

{¶ 5} In August 2015, Cynthia lived with three of her children and her brother, Willie Steen, in a single-family home in Huber Heights.   Johnson did not live in the area and he did not have a key to Cynthia's residence, but he had previously been to Cynthia's home to visit his children.   In the afternoon of August 2, 2015, Cynthia was home with her brother and two minor children.

---

[1] Because the two complainants, Cynthia Steen and Willie Steen, share the same last name, we will refer to them by their first names for the sake of clarity.

{¶ 6} Shortly before 2:00 p.m. on August 2, 2015, Johnson drove to Cynthia's residence; he had not been invited, and neither Cynthia nor Willie was aware that Johnson was coming. Fred Brock, who lives a couple of houses away, saw Johnson's vehicle go to Cynthia's home, but Brock could not see the driver because the driver was "slumped down" behind the wheel. Johnson exited his vehicle and went around to the back of Cynthia's house.

{¶ 7} According to Cynthia, she was talking on the telephone in the restroom when Johnson came through the bathroom door and put a black handgun to her head. When Cynthia asked Johnson what he was doing, he responded that Cynthia was "going to try to take [his] kids from [him]." Johnson told Cynthia to get dressed to go out; Cynthia responded that she was not going anywhere. Johnson then instructed Cynthia to go into her bedroom (next to the bathroom). Johnson took Cynthia's phone as she proceeded out of the bathroom. Upon entering in the bedroom, Johnson put the phone on the dresser and pushed Cynthia onto the bed. Johnson got on top of her and started choking her. Johnson also repeatedly hit her in the head with the handgun, causing severe pain. After the assault, Cynthia had pain in her mouth, the side of her jaw, and her forehead; her face and jaw were swollen and her lip was "busted."

{¶ 8} Willie, who was sleeping in another bedroom, was awakened by a noise and went down the hall to Cynthia's bedroom. Upon opening the door, he found Johnson holding Cynthia down by her throat. Willie testified that he went to push Johnson off of Cynthia. Johnson turned and fired two shots at Willie, striking Willie in the chest and throat. Cynthia grabbed the arm with which Johnson was holding the gun, and she told Willie to go and call 911. Willie left the bedroom, got the home's cordless phone from

the living room, and headed outside to call the police. He collapsed near the front door before he was able to make the call.

{¶ 9} After Willie had left the bedroom, Cynthia and Johnson struggled over the gun, while Cynthia told Johnson to give it to her. During the struggle, the gun went off, shooting Johnson in his lower right abdomen. Johnson let go of the gun and laid on the bed. Cynthia got up and ran to find her brother. As Cynthia tended to Willie, Johnson came out the front door, got into his vehicle and drove away. Johnson sought assistance at a Dayton fire station; Johnson told Firefighter Bernadette Ryan that he and his girlfriend were arguing over a gun and it accidentally went off.

{¶ 10} Both Willie and Johnson were transported (separately) to the hospital, where they were treated for their injuries.

{¶ 11} On August 21, 2015, Johnson was indicted on seven charges: kidnapping (Count One); aggravated burglary (deadly weapon) (Count Two); aggravated burglary (serious physical harm – Willie Steen) (Count Three); felonious assault (serious physical harm – Willie Steen) (Count Four); felonious assault (deadly weapon – Willie Steen) (Count Five); felonious assault (deadly weapon – Cynthia Steen) (Count Six); and possession of a defaced firearm (Count Seven). Counts One through Six each included a firearm specification.

{¶ 12} After a jury trial, Johnson was convicted of Counts One through Six and the accompanying specifications. Johnson was acquitted of Count Seven (possession of a defaced firearm). As stated above, after merging several counts and specifications, the trial court imposed a combination of consecutive and concurrent mandatory sentences totaling 22 years in prison.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 13} In his initial brief, Johnson claims that his convictions for aggravated burglary (Counts Two and Three) and for the felonious assault charge related to Cynthia Steen (Count Six) are based on insufficient evidence and are against the manifest weight of the evidence.

{¶ 14} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} In contrast, an argument based on the weight of the evidence "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12; s*ee Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 16} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*A. Aggravated Burglary*

{¶ 17} Johnson was convicted of one count of aggravated burglary in violation of R.C. 2911.11 (A)(1) (Count Three) and one count of aggravated burglary in violation of R.C. 2911.11(A)(2) (Count Two). The aggravated burglary statute reads, in relevant part:

> (A) No person, *by force, stealth, or deception*, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on

another;

(2) The offender has a deadly weapon or dangerous ordnance on or about

the offender's person or under the offender's control.

(Emphasis added.) Johnson claims that the State failed to present sufficient evidence that he entered Cynthia's residence by stealth or force. (The State did not argue, and the jury was not instructed on, deception.)

{¶ 18} The term "stealth" is not defined in the Revised Code, but we and other Ohio appellate courts have defined it to mean "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." *State v. Reeves*, 2d Dist. Montgomery No. 16987, 1999 WL 129469 (Mar. 12, 1999), quoting *State v. Ward*, 85 Ohio App.3d 537, 540, 620 N.E.2d 168 (3d Dist.1993), quoting *State v. Lane*, 50 Ohio App.2d 41, 47, 361 N.E.2d 535 (10th Dist.1976). *See also, e.g.*, *State v. Vidal*, 11th Dist. Portage No. 2016-P-0018, 2016-Ohio-8115, ¶ 28; *State v. Belcher*, 6th Dist. Lucas Nos. L-13-1250, L-13-1252, 2014-Ohio-5596, ¶ 33; *State v. Stewart*, 8th Dist. Cuyahoga No. 86396, 2006-Ohio-1072, ¶ 17.

{¶ 19} In *Reeves*, we noted that evidence that a defendant entered through a back entry secluded from view was sufficient to establish the element of stealth. *Reeves* at *6. In *State v. Shelly*, 9th Dist. Wayne No. 10CA32, 2011-Ohio-4301, the Ninth District concluded that the State had presented sufficient evidence that the defendant entered the house by stealth when, after knocking on the front door and receiving no answer, the defendant entered through the back door, which was not visible from the street. *Id.* at ¶ 13. The Eighth District used similar reasoning in *State v. Williams*, 8th Dist. Cuyahoga No. 92668, 2009-Ohio-6826, stating:

Although there was no testimony as to how Williams gained entrance to [the] house, circumstantial evidence supports the inference he gained entrance by stealth. Williams and his co-defendant did not attempt to gain entrance via the front or side doors. Instead, the door in the back of the house was forced off its hinges. Although we cannot discern whether Williams or his co-defendant forced the door open, there is no question that entry was made in the back of the home to prevent detection by neighbors. Because circumstantial evidence is given the same weight as direct evidence, sufficient evidence was presented that Williams committed the burglary with stealth.

*Williams* at ¶ 12.

{¶ 20} Here, Johnson drove to Cynthia's home in the afternoon of August 2. Although Brock (Cynthia's neighbor) saw Johnson drive down the street and park in Cynthia's driveway, he was unable to get a good look at Johnson as he drove up the street, because Johnson was "slumped down" in his seat. Upon exiting the vehicle, Johnson went to the rear of Cynthia's residence, which was not visible from the street, where he apparently gained entry to the home; Johnson did not ring the doorbell, knock on the door, call out, or otherwise make his presence known before entering. Cynthia testified that she had not invited Johnson to her house and did not know he was coming and that Johnson did not have a key. Upon entering the home, Johnson did not announce his presence until he located Cynthia in the bathroom and pointed a gun at her. The State's evidence was sufficient for the jury to reasonably conclude that Johnson entered Cynthia's residence by stealth, and we cannot find that the jury lost its way when

it convicted Johnson of aggravated burglary.

{¶ 21} In its appellate brief, the State asserts that Johnson trespassed by force by threatening Cynthia with a gun after entering the house. Even if we did not find that there was sufficient evidence that Johnson entered Cynthia's home by stealth, we would find that there was sufficient evidence that he trespassed by force. "Trespass" is defined in terms of the following: "No person, without privilege to do so, shall * * * [k]nowingly enter *or remain on the land or premises of another* [.]" (Emphasis added.) R.C. 2911.21(A)(1); *State v. Perry*, 2d Dist. Montgomery No. 26421, 2015-Ohio-2181, ¶ 27. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Force" is satisfied by "any effort physically exerted." *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, 947 N.E.2d 1281, ¶ 18 (9th Dist.).

{¶ 22} Cynthia testified that, while she was on the telephone in her bathroom, "the door opened and he [Johnson] came in and he had a gun. And I was sitting on the commode and he put the gun to my head." Based on Cynthia's testimony, the jury could have concluded that Johnson used force to trespass in a separately occupied area of the residence when, without permission, he opened the door to the bathroom and entered.

*B. Felonious Assault (Count Six)*

{¶ 23} Johnson claims that his conviction for felonious assault related to Cynthia was based on insufficient evidence and against the manifest weight of the evidence, because "[n]o evidence was presented to show that Appellant used the gun to bludgeon her with deadly force or intent, nor was any proof put forth to show that her injuries were in any way severe or life threatening." In his supplemental brief, Johnson further claims

that the gun in this case "was so small that it could not possibly cause death if it were used to pistol whip a person."

{¶ 24} R.C. 2903.11, the felonious assault statute, provides that "[n]o person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). "Deadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶ 25} A firearm that is used as a bludgeon constitutes a deadly weapon. *State v. Jackson*, 92 Ohio St.3d 436, 440, 751 N.E.2d 946 (2001). In *Jackson*, the Ohio Supreme Court held that testimony that the defendant had struck the victim over the head with his handgun, causing her to fall to her knees bleeding, was sufficient to establish "the essential elements of the crime of felonious assault under R.C. 2903.11(A)(2) in that a firearm used as a bludgeon is 'capable of inflicting death.' " *Id.*, citing *State v. Gaines*, 46 Ohio St.3d 65, 68, 545 N.E.2d 68 (1989). *See also, e.g., State v. Keil*, 5th Dist. Richland No. 16CA28, 2017-Ohio-593, ¶ 33-35 (defendant committed felonious assault when he hit victim in the head with a handgun, causing a laceration).

{¶ 26} In addition, contrary to Johnson's argument, R.C. 2903.11(A)(2) does not require that the defendant cause severe or life-threatening injuries to the victim. Rather, R.C. 2903.11(A)(2) requires the State to present evidence of "physical harm." "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 27} Here, the State presented evidence that Johnson pushed Cynthia onto her

bed and struck her repeatedly in the face with his handgun. Cynthia testified that, on a scale of one (low) to ten (high), her pain level was a ten as she was being struck by the gun. She further testified that, after the assault, she had pain in her mouth, the side of her jaw, and her forehead. She indicated that her face and jaw were swollen and her lip was "busted" as a result of Johnson's hitting her. The State introduced photographs showing Cynthia's injured face.

{¶ 28} Officer Robert Hartman, an evidence technician, recovered a Davis Industries 380 semiautomatic handgun (as well as a .380 caliber bullet and .380 caliber shell casings) from Cynthia's residence. We reject Johnson's assertion that, as a matter of law, the smaller size of the firearm rendered it incapable of inflicting death if used as a bludgeon. Moreover, the jury was able to view the weapon and evaluate whether it met the definition of a deadly weapon.

{¶ 29} Cynthia's testimony was sufficient to establish that Johnson committed felonious assault, in violation of R.C. 2903.11(A)(2), when he repeatedly struck her in the face with a handgun. Moreover, upon review of the entire record, Johnson's conviction for felonious assault (Count Six) was not against the manifest weight of the evidence.

{¶ 30} Johnson's first assignment of error is overruled.

### III. Allied Offense of Similar Import

{¶ 31} In his supplemental brief, Johnson claims that the trial court erred when it failed to merge Counts Five and Six, both of which charged felonious assault (deadly weapon).

{¶ 32} Ohio's allied offense statute, R.C. 2941.25, provides that:

(A) Where the same conduct by defendant can be construed to constitute

two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶ 33}** " 'As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

**{¶ 34}** The Supreme Court further explained:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a

defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff* at ¶ 26.

**{¶ 35}** In this case, the Counts Five and Six – both felonious assault (deadly weapon) – involved separate victims. Count Five related to the felonious assault on Willie, whereas Count Six related to the felonious assault on Cynthia. The harm for each victim is separate and distinct. Accordingly, the trial court did not err in failing to merge these offenses as allied offenses of similar import.

**{¶ 36}** The supplemental assignment of error is overruled.

### IV. Conclusion

**{¶ 37}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Andrew T. French
Jeffrey T. Gramza
Hon. Steven K. Dankof