[Cite as *State v. Harris-Smith*, 2018-Ohio-3069.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27822 |
| | : | |
| v. | : | Trial Court Case No. 2017-CRB-5058 |
| | : | |
| JOHNIECSA HARRIS-SMITH | : | (Criminal Appeal from |
| | : | Municipal Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of August, 2018.

. . . . . . . . . . .

GARRETT P. BAKER, Atty. Reg. No. 0084416, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

DARRELL L HECKMAN, Atty. Reg. No. 0002389, One Monument Square, Suite 200, Urbana, Ohio 43078
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the December 11, 2017 Notice of Appeal of Johniecsa Harris-Smith. Harris-Smith appeals from the November 14, 2017 decision of the Dayton Municipal Court finding her guilty of two counts of falsification, in violation of R.C. 2921.13(A)(3), misdemeanors of the first degree, following Harris-Smith's no contest pleas. The court sentenced Harris-Smith to suspended sentences of 30 days and imposed fines of $25.00 on each offense. We hereby affirm the judgment of the trial court.

{¶ 2} Harris-Smith was charged with two counts of falsification by way of complaint on August 4, 2017, and she entered not guilty pleas on August 11, 2017. Her complaints both provide that she "did unlawfully and knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when the statement is made with purpose to mislead a public official, to wit: Montgomery County Auditor in performing the public official's official function."

{¶ 3} At her November 17, 2017 plea hearing, Harris-Smith acknowledged that she chose to reject the State's offer to plead guilty to one count of obstruction of official business, a misdemeanor of the third degree, in exchange for the dismissal of the falsification charges, and she indicated that she intended to plead no contest to falsification. After the court accepted her no contest pleas, the prosecutor presented the following facts to the court. On March 21, 2017, Harris-Smith made false statements on two Ohio Dangerous Dog Registration Certificates for her dogs, "Buddy" and "Remy." The prosecutor asserted that State's Exhibit 1 was executed by Harris-Smith in the presence of Deputy Auditor Jody Hackett, an employee and agent of Montgomery County

Auditor Karl Keith, and that Harris-Smith represented thereon that Buddy was a neutered male dog. State's Exhibit 1 provides in relevant part as follows: "**Dog description:** * * * **Sex: ___ Male (Neutered) ___Female (Spayed)**". There is a handwritten checkmark on the line between "**Sex:**" and "**Male (Neutered).**'"

{¶ 4} According to the prosecutor, State's Exhibit 3, which is a form identical to State's Exhibit 1, except that it pertains to Remy, was also executed by Harris-Smith in the presence of Hackett, and Harris-Smith placed a checkmark on the line between "**Male (Neutered)**" and "**Female (Spayed)**".

{¶ 5} Directly above Harris-Smith's signatures at the bottom of each form is the following certification:

> *I certify that, to the best of my knowledge and belief, the information on this form, under penalty of perjury, is true, correct, complete, and made in good faith. I understand that this form or the information it contains may be made available to federal, state, and/or local law enforcement agencies for such action within their jurisdiction as they deem appropriate. I understand that knowingly making any false or fraudulent statement or representation to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.*

(Emphasis sic.)

{¶ 6} The prosecutor stated that subsequent examinations of the dogs by Veterinarian Kelly Meyer revealed that they had not been neutered and spayed. The prosecutor stated that State's Exhibits 2 and 4 are Meyer's reports which detail her examinations of the dogs. The prosecutor stated that the "only way to obtain a

dangerous dog registration certificate is to have a male dog neutered or a female dog spayed."

{¶ 7}  Counsel for Harris-Smith then advised the court that he did not contest the above facts but "would like to make a legal argument."   Defense counsel argued that the statements made by Harris-Smith on the certificates were not knowingly made.   He asserted that subsection (3) of R.C. 2921.13 does not apply to the facts herein, and he directed the court's attention to subsection (5) of R.C. 2921.13, which he argued "would be the more appropriate section under these facts if the State were to bring charges under these facts." Defense counsel argued that "subsection 5 is much more specific than subsection 3 and to read subsection 3 the way the State is asking would render it meaningless." Counsel argued that Crim.R. 7 did not allow the State to amend its complaint at the current stage of the proceedings.

{¶ 8} Counsel for Harris-Smith directed the court's attention to *State v. Parks*, 13 Ohio App.3d 85, 468 N.E.2d 104 (10th Dist.1983), that the "issuing of student identification cards by a clerk at O.S.U. does not constitute the performance of an 'official function' within the meaning of that term as used in R.C. 2921.13(A)(3)."   *Id.* at paragraph two of the syllabus.   The Tenth District in *Parks* found as follows:

> * * * [W]hile we have a great respect for tasks performed by the numerous clerical staffs of the various state agencies and offices, to say that each is a "public official" performing "official functions" for the purposes of R.C. 2921.13(A)(3) would be to stretch the reach of that statute beyond logic and reason.
>
> It is a basic rule of statutory construction that where sections of a

statute are *in pari materia*, they shall be construed together so as to give full force and effect to the legislative intent. See, generally, 50 Ohio Jurisprudence 2d (1961) 189, Statutes, Section 216, and numerous decisions cited therein. In the case at bar, the eight[1] subdivisions of R.C. 2921.13(A), each being a delineation of instances in which the making of a false statement becomes a criminal act, should be construed together when interpreting the intention of the legislature in enacting the statute.

A review of the falsification statute reveals that the legislature did not intend for all falsehoods made to minor functionaries to result in criminal liability. Indeed, each section appears to be aimed at prohibiting deceit in somewhat narrow circumstances. Also, R.C. 2921.13(A)(3) and (6) are the only two sections which specify a particular person to whom the false statement must be made, while R.C. 2921.13(A)(3) requires the person to be performing an "official function." * * * [W]e cannot say that the clerk involved herein, having no discretionary powers or any other indicia of independence, performs an "official function" when she issues student identification cards. * * *

This action would appear to fall under R.C. 2921.13(A)(8) as the appellant [student] deceptively sought to obtain a "valuable benefit" from the university [an identification card]. This rather innocuous action would not lead to criminal liability then, unless "* * * the person to whom such statement is directed relies upon it to his detriment."

---

[1] The current version of R.C. 2921.13(A) contains 15 subdivisions.

However, since the appellant's conduct, as a matter of law, does not violate R.C. 2921.13(A)(3), appellant's sole assignment of error is well-taken.

*Id.* at *86-87.

**{¶ 9}** The municipal court rejected defense counsel's argument that subsection (5) of R.C. 2921.12(A) controls herein, relying on *State v. Brown*, 2d Dist. Montgomery No. 11217, 1988 WL 129184 (Nov. 29, 1988). In *Brown*, the trial court dismissed Brown's indictment on two counts of theft by deception, in violation of R.C. 2913.02(A)(3), finding that Brown should have been indicted pursuant to R.C. 2921.13(A)(4), which prohibits the making of false statements to obtain "aid to dependent children benefits or other benefits, such as food stamps." *Id.* at *1. In reversing and remanding the matter, this Court determined as follows in *Brown*:

> * * * [T]he necessary predicate for the prevailing of a more specific statute over a more general statute in accordance with R.C. 1.51, is missing in this case. R.C. 2913.02(A)(3) and R.C. 2921.13(A)(4) are not in irreconcilable conflict. R.C. 2913.02(A)(3) prohibits knowingly obtaining or exerting control over property or services by deception. R.C. 2913.02(A)(4) prohibits the making of a false statement with the purpose of securing benefits administered by a governmental agency or paid out of a public treasury. Each of the two statutory prohibitions carries a different penalty. The two provisions are not irreconcilable. Theft by Deception requires as an element the actual obtaining of property or services. The actual obtaining of services is not required for Falsification, since merely

making a false statement with the purpose of securing benefits, regardless

of whether those benefits are actually obtained, is prohibited by that statute.

Since the two statutes are not in irreconcilable conflict, R.C. 1.51

does not come into play. * * *

*Id.* at *1-2.

{¶ 10}   The municipal court further concluded "that the knowingly part has been

satisfied * * * through the information on the documents.   There has been no dispute as

to whether or not she actually submitted or prepared the document."

{¶ 11}  After the court found Harris-Smith guilty, defense counsel argued as

follows:

At the time she executed the * * * documents she marked the

documents male and female.   She did not intend that to indicate that the

animals were spayed or neutered.   I think the fact that the * * * spayed and

neutered portion is in parentheses after could make that, those documents

a bit, a bit misleading to her.

{¶ 12}  Harris-Smith then advised the court as follows:

Yes, I would like the court to know that I did not intentionally or I did

not lie on any forms that I filled out.   The one, my dog was actually pregnant

at the time, so there is no way I would have went and said she was spayed

or neutered.   The one who, the other dog Buddy was the father of the

puppies.   So, * * * like he was saying, that's what I was trying to tell him

from the beginning is that I was just marking that they were a female dog

and a male dog, not that they were spayed or neutered.   * * * I would not

lie about anything like that knowing my dog was pregnant and we were just getting finished and I was just following the courts you know, they said go get the dangerous dog tags and that's what I went down there to do.

{¶ 13} Harris-Smith asserts two assignments of error herein, which we will consider together.

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH THE CUPLABLE MENTAL STATE OF "KNOWLINGLY."

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH THAT THE DEFENDANT'S STATEMENT WAS MADE TO MISLEAD A PUBLIC OFFICIAL IN PERFORMING HER OFFICIAL FUNCTION.

{¶ 14} In her first assignment of error, Harris-Smith argues that the "resolution of this assignment of error turns on the form in question." She asserts that, because R.C. 2921.13 "requires the culpable mental state of 'knowingly[,]' reasonable ignorance of the meaning of a form is a defense." She argues that the form "is not clear enough to justify" an inference that she knowingly represented that her dogs were spayed or neutered. According to Harris-Smith, it "is just as reasonable to assume that neutered or not neutered is a statistical datum, not a prerequisite to registration." She asserts that her "poignant explanation at sentencing * * * fully explains why the appropriate culpable mental state was not established."

{¶ 15} In her second assignment of error, Harris-Smith argues that "the State stubbornly insisted that it did not seek an amendment and proceeded on R.C. 2921.13(A)(3). This is a fatal mistake." She asserts that R.C. 2921.13(A)(3) "requires

a knowingly false statement 'with purpose to mislead a public official in performance of his official function'. Not every such statement to a public official is relating to his official functions. If that were true, there would be no need [for] subsection five which specifically refers to applications for licenses." Harris-Smith directs our attention to *Parks*, which she asserts "fully covers the issues in this case [and] should be dispositive of this appeal."

{¶ 16} The State responds that "we can infer that [Harris-Smith] knowingly misled a public official from the surrounding circumstances." According to the State, Harris-Smith "made no attempt to cross out the language on the forms, or refuse to sign the forms, inquire as to the language on the forms, white out the language on the forms, or refuse to sign the form[s] in front of Deputy Auditor Jodi Hackett. To the contrary, Appellant signed the forms attesting to the truthfulness of the information contained within them." The State asserts that, pursuant to R.C. 955.22(I)(1)(c)(ii), an owner of a dangerous dog must provide evidence to the county auditor that the dog is spayed or neutered, or a statement from a veterinarian that spaying or neutering is medically contraindicated, to obtain a dangerous dog registration certificate. The State notes that Harris-Smith acknowledged at sentencing that the "animals were intact," and that she was "was aware of facts and circumstances[ ] which were inconsistent with what was attested to after she read a warning statement against submitting a false statement to the government."

{¶ 17} The State notes that "it seems as though the crux of Appellant's argument in her Second Assignment of Error is that Appellant should have been found not guilty of R.C. § 2921.13(A)(3) because the State chose a more general code section over a more

specific code section." The State asserts that it "validly exercised its discretion in charging Appellant with R.C. § 2921.13(A)(3)." According to the State, the "necessary predicate for a specific statute to prevail over a general statute is an ***irreconcilable conflict***. *See* R.C. § 1.51. Such conflict arises when the same conduct receives different penalties under two different statutes." The State directs our attention to *Brown*. The State argues that statutes "are not in conflict simply because a defendant can be convicted under two statutes for the same or similar conduct." The State asserts that the "penalties for R.C. § 2921.13(A)(3) and R.C. § 2921.13(A)(5) are the same. As these are separate subsections under the same statute, the general versus specific analysis does not apply," and "R.C. § 1.51 does not come into play."

{¶ 18} In reply, Harris-Smith argues that the "State ignored the main thrust of appellant's argument – that the addition of parentheses around the words 'spayed' and 'neutered' created an ambiguity that precluded a finding of knowing falsity by Ms. Harris-Smith." Citing *Chipperfield v. Missouri. Air Conservation Comm.* 229 S.W.3d 226 (S.D. Mo.2007), Harris-Smith argues that the "words 'spayed' and 'neutered' were NOT ESSENTIAL to the registration of the American bulldog and the pit bulldog, in question."

{¶ 19} The court in *Chipperfield* noted as follows:

Parentheses are used "[t]o set off matter not intended to be part of the main statement" and "[t]o enclose any explanatory word not a part of a written or printed statement." *Government Printing Office Style Manual* §§ 8.91 and 8.93 (2000). "Parentheses should be used ... to enclose parenthetical material that is only remotely connected with the content ... or to enclose incidental explanatory matter." *Webster's New World English*

*Grammar Handbook* 170 (2002). In other words, parentheses "are used in pairs to enclose matter that is helpful but not essential." *The Redbook, A Manual on Legal Style* § 1.33 (2002). Consequently, the meaning of the words within the parentheses should be considered as incidental explanatory matter which is not a part of, or at least is not essential to, the main statement.

*Id*. at *252.

**{¶ 20}** As this Court has previously noted:

A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 14.

**{¶ 21}** R.C. 2921.13 provides:

(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:

* * *

(3)    The statement is made with purpose to mislead a public official in performing the public official's official function.

* * *

(5) The statement is made with purpose to secure the issuance by a governmental agency of a license, permit, authorization, certificate, registration, release, or provider agreement.

{¶ 22}  R.C. 2901.22(B) defines "knowingly" and provides:

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.   A person has knowledge of circumstances when the person is aware that such circumstances probably exist.   When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 23}  A definition of "public official" is found in R.C. 102.01(B), which provides that the term "means any person who is elected or appointed to an office or is an employee of any public agency."

{¶ 24} R.C. 955.22 provides in part as follows:

(I)(1) The county auditor shall issue a dangerous dog registration certificate to a person who is the owner of a dog, who is eighteen years of age or older, and who provides the following to the county auditor:

* * *

(c) With respect to the person and the dog for which the registration is sought, all of the following:

* * *

(ii) Either satisfactory evidence of the fact that the dog has been neutered or spayed or a statement from a licensed veterinarian that neutering or spaying of the dog is medically contraindicated[.]

{¶ 25} Regarding Harris-Smith's first assignment of error, we conclude that sufficient evidence established the culpable mental state of knowingly, and we find unavailing her argument that the presence of the parentheses around the words "neutered" and "spayed" on her applications for dangerous dog certificates created an ambiguity.

{¶ 26} R.C.2937.07 governs a court's actions on a plea of no contest in misdemeanor cases and provides in relevant part: "A plea to a misdemeanor offense of 'no contest' * * * shall constitute an admission of the truth of the facts alleged in the complaint and * * * the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense." Each complaint alleged that Harris-Smith knowingly made a false statement or knowingly affirmed the truth of a false statement to the county auditor, and by pleading no contest, she is deemed to have admitted those facts. Harris-Smith further admitted to the court that she knew her dogs were intact, yet she certified under penalty of perjury that they were not. Given the language of R.C. 955.22(I)(1)(c)(ii), which mandates the issuance of a dangerous dog certificate upon, inter alia, "satisfactory evidence that the dog has been neutered or spayed," we cannot agree with Harris-Smith that the words "neutered" and "spayed" were

"not essential to the registration" of Buddy and Remy. In other words, we conclude that the words enclosed in parentheses in this instance serve to qualify, clarify, or explain the words before them. Having reviewed the evidence in a light most favorable to the prosecution, and having concluded that any rational trier of fact could have found the element of knowingly proven beyond a reasonable doubt, Harris-Smith's first assignment of error is overruled.

{¶ 27} Regarding Harris-Smith's second assignment of error, we find her reliance on *Parks* to be misplaced, since Hackett, a public official to whom Harris-Smith knowingly made false statements about her dogs, performed an official function when she issued the dangerous dog registration certificates to Harris-Smith, as required by R.C. 955.22(I)(1). In other words, unlike in *Parks*, Harris-Smith's conduct violated R.C. 2921.13(A)(3), since sufficient evidence established that her statements were made with purpose to mislead Hackett in performing her official function of issuing dangerous dog certificates. Any suggestion, pursuant to *Parks,* that the State's decision to prosecute her pursuant to R.C. 2921.13(A)(3), instead of R.C. 2921.13(A)(5), is "a fatal mistake," accordingly lacks merit. Harris-Smith's second assigned error is overruled.

{¶ 28} The judgment of the municipal court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.


Copies mailed to:

Garrett P. Baker
Darrell L. Heckman

Hon. Deirdre E. Logan